MOSK, J.—
I dissent.
I address an “important” question (People v. Breverman (1998) 19 Cal.4th 142, 184, fn. 1 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (dis. opn. of Mosk, J.)) that I had heretofore “decline [d] to consider ... in detail and in depth” (19 Cal.4th at p. 184, fn. 1; accord, People v. Lee (1999) 20 Cal.4th 47, 70, fn. 1 [82 Cal.Rptr.2d 625, 971 P.2d 1001] (dis. opn. of Mosk, J.)), namely, the “relationship between” the crimes of “murder and manslaughter” (People v. Breverman, supra, 19 Cal.4th at p. 184, fn. 1 (dis. opn. of Mosk, J.); accord, People v. Lee, supra, 20 Cal.4th at p. 70, fn. 1 (dis. opn. of Mosk, J.)).
A crime generally comprises elements of mental state and also conduct or consequences or both.
Murder is defined by statute as the “unlawful killing of a human being . . . with malice aforethought.” (Pen. Code, § 187, subd. (a).) A killing is *95 unlawful when it is not justified (see id., §§ 196-198.5, 199), as by self-defense (id., §§ 197-198.5), or excused (see id., §§ 195, 199), as by accident or misfortune (id., § 195). (People v. Frye (1992) 7 Cal.App.4th 1148, 1155 [10 Cal.Rptr.2d 217]; see People v. Thompson (2000) 79 Cal.App.4th 40, 50 [93 Cal.Rptr.2d 803].)[1] Malice aforethought “may be express or implied.” (Pen. Code, § 188.) It is “express” “when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature” (ibid.)— when, as we held in In re Christian S. (1994) 7 Cal.4th 768, 778 [30 Cal.Rptr.2d 33, 872 P.2d 574], there is a deliberate and “wrongful” intent to kill. It is “implied” “when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart” (Pen. Code, § 188)—when, as we put it in People v. Watson (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279], there is a “wanton disregard for human life.”
Manslaughter is defined by statute as the “unlawful killing of a human being without malice [aforethought].” (Pen. Code, § 192.) It is “[v]oluntary” when it is perpetrated “upon a sudden quarrel or heat of passion” (id., § 192, subd. (a)) following provocation adequate to arouse a reasonable person (e.g., People v. Valentine (1946) 28 Cal.2d 121, 136-144 [169 P.2d 1])— briefly, when it is perpetrated upon “adequate provocation” (e.g., People v. Rhinehart (1973) 9 Cal.3d 139, 154 [107 Cal.Rptr. 34, 507 P.2d 642], disapproved on another point, People v. Bolton (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr. 141, 589 P.2d 396]; People v. Williams (1969) 71 *96 Cal.2d 614, 624 [79 Cal.Rptr. 65, 456 P.2d 633]) or, more briefly still, upon “provocation” (e.g., People v. Jackson (1980) 28 Cal.3d 264, 305 [168 Cal.Rptr. 603, 618 P.2d 149] (plur. opn. of Richardson, J.); People v. Morse (1969) 70 Cal.2d 711, 734 [76 Cal.Rptr. 391, 452 P.2d 607]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, § 512, p. 579). It is “[i]nvoluntary” when it is perpetrated (other than in the driving of a vehicle) either “in the commission of an unlawful act, not amounting to a felony” (Pen. Code, § 192, subd. (b)), or “in the commission of a lawful act which might produce death, in an unlawful manner” (ibid.), or “without due caution and circumspection” (ibid.).
Thus, murder includes among its elements malice aforethought, which is the requisite mental state.
By contrast, in both its voluntary and involuntary forms, manslaughter excludes malice aforethought.
For involuntary manslaughter, the requisite mental state is clear from its definition. It is the state of mind that belongs to any underlying nonfelonious “unlawful act” (Pen. Code, § 192, subd. (b)), or that attends the “commission,” “in an unlawful manner,” “of a lawful act which might produce death” (ibid.), or that is indicated by the absence of “due caution and circumspection” (ibid.).
For voluntary manslaughter, however, the requisite mental state is not clear from its definition. But it becomes so when voluntary manslaughter is considered in conjunction with murder: It is the state of mind that amounts in fact to malice aforethought, but is deemed in law not to because of provocation. (See People v. Doyell (1874) 48 Cal. 85, 96 [speaking of express malice aforethought, but without limitation thereto]; People v. Kemaghan (1887) 72 Cal. 609, 613 [14 P. 566] [following Doyell]; People v. Elmore (1914) 167 Cal. 205, 210 [138 P. 989] [same]; see also People v. Freel (1874) 48 Cal. 436, 437 [similar to Doyell].) The premise is that malice aforethought and provocation are always compatible. It is altogether sound. It is true that, in any given case, the actor may or may not be provoked when he forms a deliberate and wrongful intent to kill or proceeds with a wanton disregard for human life. But it is also true that in no case is he disabled by provocation from forming the indicated intent or proceeding with the indicated disregard.
It follows that provocation may be treated as an “element” of voluntary manslaughter, but only—against my former view (see People v. Lee, supra, 20 Cal.4th at p. 75, fn. 2 (dis. opn. of Mosk, J.))—when voluntary manslaughter is considered in conjunction with murder. Which is to say, it is *97 only then that nonprovocation may be treated as an “element” of murder, or more precisely, a “sub-element” of malice aforethought. (Cf. Pen. Code, § 188 [stating that malice aforethought is “implied” “when no considerable provocation appears”].) For provocation can have meaning and effect only when it can reduce malice aforethought to a less culpable mental state.
That nonprovocation may thus be treated as an “element” of murder does not make it one in any proper sense. An element is a legal requirement of a crime. Nonprovocation is not such. Rather, it is a fact that may or may be not raised by the particular evidence admitted at any individual trial. Provocation does not quite function as an affirmative defense to murder, in the sense of constituting a fact that is separate and independent from its elements. But it functions not dissimilarly, albeit with the prosecution bearing the burden of disproof (People v. Bloyd (1987) 43 Cal.3d 333, 349 [233 Cal.Rptr. 368, 729 P.2d 802]).
To my mind, the so-called doctrine of imperfect self-defense—which, as we held in Christian S. and People v. Flannel (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1], comes into play when an actor “actually, but unreasonably, believe[s] he [is] in imminent danger of death or great bodily injury” (In re Christian S., supra, 7 Cal.4th at p. 771, italics omitted; accord, People v. Flannel, supra, 25 Cal.3d at pp. 672, 674-680 (lead opn. of Tobriner, J.); id. at pp. 686-687 (cone. opn. of Richardson, J.))—does not function like provocation.
Unlike provocation, the doctrine of imperfect self-defense does not find its origin in the statutory definitions of murder and voluntary manslaughter. The fact is plain, and calls for no elaboration. Hence, there is no warrant in statute for any assertion that, for voluntary manslaughter, the requisite mental state is that which amounts in fact to malice aforethought, but is deemed in law not to because of imperfect self-defense.
Also unlike provocation, the doctrine of imperfect self-defense does not allow the premise that malice aforethought and imperfect self-defense are always compatible.
By its terms, the doctrine of imperfect self-defense, as we held in Christian S. and Flannel, prohibits an actor’s “convict[ion] of’ any “crime greater than voluntary manslaughter.” (In re Christian S., supra, 1 Cal.4th at p. 771, italics added; see People v. Flannel, supra, 25 Cal.3d at pp. 672, 674-680 (lead opn. of Tobriner, J.); id. at pp. 686-687 (cone. opn. of Richardson, J.).) It does not, however, mandate his conviction of voluntary manslaughter itself. The reason is easy to discern.
*98 If the requisite mental state for voluntary manslaughter is a state of mind that amounts in fact to malice aforethought, an actual, but unreasonable, belief in imminent danger of death or great bodily injury may prove to be preclusive.
For an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury may happen not to harbor malice aforethought express in a deliberate and wrongful intent to kill. Deliberation or wrongfulness or both may be lacking. To quote Flannel, which is categorical in this regard: “[Mjalice [aforethought],” including, of course, express malice aforethought, “cannot coexist with such [a] . . . belief . . . .” (People v. Flannel, supra, 25 Cal.3d at p. 675 (lead opn. of Tobriner, J.); see id. at pp. 686-687 (cone. opn. of Richardson, J.).) To quote Christian S., which is similarly categorical: A person “who acts with” an “actual belief in the necessity for self-defense” does not act with the required wrongful intent to kill because he “necessarily believes he is acting lawfully.” (In re Christian S., supra, 7 Cal.4th at pp. 778, 780, fn. 4.) That an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury may happen to possess a bare intent to kill is, of course, not enough. Intent to kill simpliciter does not amount to express malice aforethought, since it is neither deliberate nor wrongful. It scarcely needs mention that intent to kill is not morally culpable in and of itself. In self-defense, it is at least morally neutral. In defense of others, it is perhaps even morally praiseworthy.
Similarly, an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury may happen not to harbor malice aforethought implied in a wanton disregard for human life. Wantonness, at least, may be lacking. To quote Flannel’s categorical statement a second time: “[Mjalice [aforethought],” including, of course, implied malice aforethought, “cannot coexist with such [a] . . . belief . . . .” (People v. Flannel, supra, 25 Cal.3d at p. 675 (lead opn. of Tobriner, J.); see id. at pp. 686-687 (cone. opn. of Richardson, J.).) To quote Christian S., which is categorical as well: A person “who acts with” an “actual belief in the necessity for self-defense does not act with the . . . required” wantonness. (In re Christian S., supra, 7 Cal.4th at p. 780, fn. 4.)
That an actual, but unreasonable, belief in imminent danger of death or great bodily injury may prove to be preclusive with respect to the mental state required for voluntary manslaughter, namely, a state of mind that amounts in fact to malice aforethought, leads to no untenable result. Surely, it does not grant any immunity to any actor who commits an unlawful killing. For practically by definition, an actor who entertains such a belief *99 acts “without due caution and circumspection” (Pen. Code, § 192, subd. (b)). Hence, if he is guilty of nothing else, he must be guilty of involuntary manslaughter.
One might perhaps argue that an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury necessarily possesses a mental state more culpable than the one indicated by the absence of “due caution and circumspection” (Pen. Code, § 192, subd. (b)) required for involuntary manslaughter. Such an argument would be dubious, inasmuch as the absence of due caution and circumspection describes a state of mind at least approaching recklessness (e.g., People v. Penny (1955) 44 Cal.2d 861, 879-880 [285 P.2d 926]). It would also miss the mark. The mental state that voluntary manslaughter requires is one that amounts in fact to malice aforethought. But both Christian S. and Flannel make plain that an actual, but unreasonable, belief in imminent danger of death or great bodily injury may prove to be preclusive. It does not matter that an actor who entertained such a belief might have, or indeed would have, harbored malice aforethought in its absence. What matters is that he did, in fact, entertain such a belief, and did not, in fact, harbor malice aforethought.[2]
In the case at bar, the superior court erred by refusing to instruct the jury at appellant’s request to the effect that the doctrine of imperfect self-defense allowed a verdict finding him guilty of involuntary manslaughter. It did so reversibly. Reversal is required under People v. Watson (1956) 46 Cal.2d 818, 837 [299 P.2d 243], when there is a “reasonable probability]” that the error contributed to the outcome. There is such a reasonable probability when there is “merely a reasonable chance, more than an abstract possibility,” of an effect of this kind. (College Hospital, Inc. v. Superior Court (1994) 8 Cal.4th 704, 715 [34 Cal.Rptr.2d 898, 882 P.2d 894], italics in original; see Aerojet-General Corp. v. Transport Indemnity Co. (1997) 17 Cal.4th 38, 68 [70 Cal.Rptr.2d 118, 948 P.2d 909].) On my review of the record, which is far from unequivocal regarding the fight between appellant and the victim *100 including the striking of the fatal blow, I am compelled to conclude that there is at least a reasonable chance that the superior court’s refusal to instruct the jury on the doctrine of imperfect self-defense and involuntary manslaughter contributed to the jury’s verdict finding appellant guilt of voluntary manslaughter. '
Appellant’s petition for a rehearing was denied July 26, 2000.

In subdivision (a) of section 189.5 of the Penal Code, whose predecessor was section 1105 of the same code as originally enacted in 1872, it is stated that, “[u]pon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances . . . that justify or excuse it. . . devolves upon the defendant, unless the proof on the part of the prosecution tends to show . . . that the defendant was justifiable or excusable.” Contrary to appearances (People v. Frye, supra, 7 Cal.App.4th at p. 1154; but see People v. Cardoza (1943) 57 Cal.App.2d 489, 494 [134 P.2d 877]), the provision does not impose on the defendant any burden of proof, of whatever quantum, as to justification or excuse, but only a burden of producing evidence to raise a reasonable doubt in the premises after the prosecution has itself produced evidence that would support a finding beyond a reasonable doubt (People v. Gonzalez (1990) 51 Cal.3d 1179, 1214-1215 [275 Cal.Rptr. 729, 800 P.2d 1159]; see People v. Deloney (1953) 41 Cal.2d 832, 841 [264 P.2d 532]; People v. Cornett (1948) 33 Cal.2d 33, 42-43 [198 P.2d 877]; People v. Albertson (1944) 23 Cal.2d 550, 587 [145 P.2d 7]; People v. Wells (1938) 10 Cal.2d 610, 621-623 [76 P.2d 493]; People v. Thompson, supra, 79 Cal.App.4th at p. 50; People v. Frye, supra, 7 Cal.App.4th at p. 1154). This reading of the provision “has long been established” (People v. Frye, supra, 7 Cal.App.4th at p. 1154; see People v. Cornett, supra, 33 Cal.2d at p. 42), and can hardly be disturbed now. Indeed, any other reading would conflict with the due process clause of the Fourteenth Amendment to the United States Constitution, which requires the state to prove beyond a reasonable doubt every element of a crime, including every underlying fact. (Sullivan v. Louisiana (1993) 508 U.S. 275,277-278 [113 S.Ct. 2078, 2080-2081,124 L.Ed.2d 182].) The unlawfulness of the killing in question is one of the elements of murder. Its underlying facts include those bearing on the absence of justification and excuse.

The majority state that they “have no quarrel with” my “view” that an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury may be guilty of involuntary manslaughter. (Maj. opn., ante, at p. 91.) They go on to state that such an actor, however, is “guilty of voluntary manslaughter” when he acts “with the intent to kill or with conscious disregard for life.” {Ibid., italics in original.) For my part, I have no quarrel with their view. So long as the actor is not precluded by his belief from possessing a state of mind that amounts in fact to malice aforethought, and does indeed possess a state of mind of that sort. I understand the majority to refer to implied malice aforethought when they use the phrase “conscious disregard for life.” And I understand them to refer to express malice aforethought when they use the phrase “intent to kill.” As I have explained in the text, bare intent to kill is not enough for express malice aforethought, since it is neither deliberate nor wrongful.